## DARWIN STOCKING & others, Executors, *vs.* RANDALL W. HANSON.

### April 20, 1876.

**Action—Substitution of Executor of Deceased Party—Time for Application.—** When, under Gen. St. ch. 66, § 36, an application for substitution is made within one year, the statute regards the application as *prima facie* in time, and the granting of the substitution is almost a matter of course; but when it is made after the lapse of a year, the application is *prima facie* too late, and it is for the party applying to excuse his delay.

**Same—Application by Supplemental Complaint—Excuse for Delay.—** In such case the supplemental complaint required should set forth, not only the grounds upon which the application is based, but should also set forth some sufficient excuse for the delay in making it. If the issue of fact raised by an answer to the supplemental complaint is tried, it is necessary for the applicant to establish the facts pleaded in excuse for his delay.

**Same—Executors Guilty of Laches in this Case.—** The facts appearing in the complaint in this case *held* to show gross laches on plaintiffs' part, in the

absence of excuse or explanation of their delay in making their supplemental complaint.

**Judgment Against Party Deceased Pending Suit.**—The district court, having jurisdiction of the subject-matter of an action, and having acquired jurisdiction of the parties, possesses the power to proceed to the final disposition of the action; and while it ought to cease to exercise its jurisdiction over a party at his death, the neglect to do so is an error to be corrected by some proceeding in the action in which the error occurs, and the judgment rendered after the party's death, though erroneous, is not on that account to be attacked in a collateral action. Such judgment is voidable when properly assailed, but not void.

**Same—Remedies Open to Executors.**—When other persons are substituted in place of a deceased party to an action under the provisions of Gen. St. ch. 66, § 36, it is open to them to move to set aside a judgment entered after the decease of the party whom they succeed, on account of error in entering the same after such decease. If the motion be denied they may appeal to the supreme court from the order of denial, as a final order affecting a subtantial right, made upon a summary application in an action after judgment. If the action be one for the recovery of real property, they may elect to let the judgment stand, and take a second trial under Gen. St. ch. 75, § 5.

Appeal by defendant from an order of the district court for Hennepin county, *Vanderburgh*, J., presiding, sustaining a demurrer to his answer to a supplemental complaint.

*D. A. Secombe*, for appellant.

*George Bradley*, for respondents.

Berry, J. Under the provisions of Gen. St. ch. 66, § 36, the plaintiffs filed a supplemental complaint, in which they allege that a certain action for the recovery of real property, pending in the district court for Hennepin county, between De Lafayette Stocking, plaintiff, and Wm. Hanson and Randall W. Hanson, defendants, was duly tried and submitted to the judge of said court on July 3, 1871; that on February 19, 1873, the judge made and filed his decision therein in favor of defendants and against the plaintiff therein; that on February 24, 1873, judgment was entered in accordance with such decision, adjudging Randall W. Hanson to be the owner and entitled to the possession of the real property in controversy; that at the time when the action was submitted the plaintiff therein was living, but that on January 6, 1872, he died testate; that his will was

admitted to probate at the place where he resided in his lifetime' and at his decease, to wit, in the city of Binghamton, in the state of New York, on February 16, 1872, and in said Hennepin county on November 25, 1872; that the plaintiffs in the present proceeding are devisees and executors named and appointed in the will aforesaid, two of them having been appointed executors in the will, and having accepted such appointment and duly qualified, and all of them (except one executor) having been made devisees by the will; and that said executors and devisees are the only persons named as such in the will. The supplemental complaint further alleges that plaintiffs have received no notice of the judgment before mentioned. The relief which the plaintiffs ask is that the judgment be opened; that they be substituted as plaintiffs in the original action in place of De Lafayette Stocking, and have leave and time to make a case therein for appeal to the supreme court, and such other or further relief as shall seem just and equitable.

For answer to the supplemental complaint, Randall W. Hanson alleges that on March 1, 1873, written notice of the judgment before mentioned was served upon George Bradley, Esq., who was one of the attorneys for De Lafayette Stocking in the original action; and, further, that on March 13, 1873, the executors mentioned returned an inventory of the estate of De Lafayette Stocking into the probate court of Hennepin county; that on April 9, 1873, the same was approved by said probate court, which, on November 24, 1873, made a final decree of distribution of said estate; and that the real estate in controversy in the action before mentioned was not included in the inventory, nor claimed in any way to belong to said estate.

To this answer plaintiffs demurred, and upon a hearing the district court granted the relief asked, to the extent of substituting the plaintiffs here as plaintiffs in the original action, in place of De Lafayette Stocking, leaving them " to take such proceedings therein, as his successors in interest,

as by law they may have a right to do." From this order Randall W. Hanson appeals to this court.

Defendant insists that the plaintiffs' application should have been denied on account of the delay in making it. The statute under which the present proceeding was taken provides that, in case of the death of a party, the court, on motion, at any time within one year thereafter, " or afterwards on a supplemental complaint, may allow the action to be continued by or against his representative or successor in interest." Gen. St. ch. 66, § 36. We think the fair construction of the statute is that, when the application for substitution is made within one year, it is allowed to be made upon a motion, (to be heard, of course, on affidavits,) upon the theory that when the lapse of time is so short the mode of procedure should be simple, it being almost a matter of course to permit the substitution; not that there may not be cases in which it may be proper to refuse it, but that the statute regards an application made within a year as *prima facie* in time. But after the lapse of a year the statute requires a more formal application by a supplemental complaint. The idea evidently is that, after so long a delay, a substitution should not be allowed without an opportunity for the opposing party to raise a regular issue by answer or demurrer—an issue to be tried as other formal issues of fact or law are tried by the court. The theory of the statute evidently is that in such cases the application is *prima facie* too late, and that it is for the party applying to excuse his delay. It is, therefore, necessary that the supplemental complaint should set forth, not only the grounds upon which the application is based, but should also set forth some sufficient excuse for the delay in making it. If the issue of fact raised by an answer is tried, it is necessary for the applicant to establish the facts set up in excuse for his delay. Whether the excuse is sufficient is a question for the sound discretion of the court.

In the proceedings at bar the supplemental complaint sets

up no excuse whatever for the plaintiffs' delay in instituting the same. For this reason the demurrer under which the defendant was, by a familiar rule, permitted to attack the complaint, should have been overruled, and judgment denying plaintiffs' application should be entered for the defendant, unless the complaint be amended by permission of the court.

It is proper, perhaps, to add that, so far from showing any excuse for their delay, the plaintiffs would appear upon the papers to have been guilty of gross laches. The present proceeding was not instituted until more than three years and eleven months after the death of the deceased, nor until more than three years after the will was admitted to probate, both in New York and in this state, nor until more than two years and nine months after the entry of the judgment. The litigation which resulted in the judgment was commenced at least over four and one-half years before the present proceeding was instituted. It related to the title of real estate of which defendant claimed to be owner, and of which he was in possession. The decease of Stocking may be presumed to have been known to plaintiffs at or very shortly after its occurrence, and more than a year before the entry of the judgment. There is nothing to show when it became known to defendant, though it is reasonable to suppose that it was not known to him as late as March 1, 1873, when he served notice of the judgment on the person who was Stocking's attorney in his life-time, but who ceased to be so at his death. Had the plaintiffs been seasonably substituted, defendant could have given them notice of the judgment, and compelled them to go to the second trial (if they desired one) from two to three years since. Of course it was the duty of these executors to proceed in this matter, as it is the duty of executors in all matters relating to the settlement of the estates of deceased persons, with diligence and despatch. When, in addition to these considerations, it is further observed that the plaintiffs' long delay

to institute the present proceeding is totally unexplained and unexcused, we have no hesitation in saying that they have been guilty of gross laches in the premises, and have thereby, as the case now stands, disentitled themselves to the relief which they ask. *Beach* v. *Reynolds*, 53 N. Y. 1; *Medbury* v. *Swan*, 46 N. Y. 200; *Pendleton* v. *Fay*, 3 Paige, 204.

This would dispose of the case in its present phase; but, with reference to a possible amendment of the complaint, we deem it advisable to consider certain other points, which were those principally argued at bar. These points relate to the character of the judgment as void or voidable, and to the question whether the substitution of the plaintiffs, if granted, would be of any practical avail.

In the action instituted by De Lafayette Stocking the subject-matter was within the jurisdiction of the district court, which had also acquired jurisdiction of the parties. Under such circumstances, in accordance with the rule mentioned in *Hayes* v. *Shaw*, 20 Minn. 405, and supported by the authorities there cited, the court "possesses the power to proceed to the final disposition of the action; and, while the court ought to cease to exercise its jurisdiction over a party at his death, the neglect to do so is an error to be corrected by some proceeding in the action in which the error occurs; and the judgment rendered after the party's death, though erroneous, is not on that account to be attacked in a collateral action. In other words, the judgment is voidable when properly assailed, but not void."

If, then, the plaintiffs in the present proceeding were substituted in place of De Lafayette Stocking in the action commenced by him, it would be open to them to take either of two courses. They could, first, move in the district court to have the judgment vacated on account of the error in entering the same after the decease of Stocking. To do this would not be to assail the judgment collaterally, since they, having been admitted as parties to the action, make

their attack in the action. Neither would they be cut off from such motion, under Gen. St. ch. 66, § 105, by the lapse of more than a year after notice of the judgment; for, even if notice had been given, this is not a case of a judgment taken against a party through his mistake, inadvertence, surprise or excusable neglect. If the motion to vacate the judgment were denied, the plaintiffs could appeal to the supreme court from the order of denial, as being a final order, affecting a substantial right, made upon a summary application in an action after judgment. Gen. St. ch. 86, § 8.

Secondly, the plaintiffs might elect to let the judgment stand, and take a second trial of the action, under the provisions of Gen. St. ch. 75, § 5. When that section declares that "any person against whom a judgment for the recovery of real property is rendered" may demand another trial, it is not to be understood as confining this right to the identical person mentioned alone, (as defendant's counsel contends,) but as giving it to him and those who represent him.

The plaintiffs would not be prevented from demanding the second trial on account of the notice to Bradley, for, his attorneyship having been determined by the death of his principal, the service was entirely futile. It follows from these views that if plaintiffs can gain a footing in the action instituted by the deceased it may be of practical advantage.

Order reversed.